### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**THEOLA VEASLEY**,

                Plaintiff,

                                      No. 2:12-cv-13642

vs.                                  Hon. Gerald E. Rosen

**THE FEDERAL NATIONAL MORTGAGE ASSOCIATION** and **BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP**,

                Defendants.

_____/

### OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Plaintiff Theola Veasley commenced this suit in Oakland County Circuit Court in July of 2012, asserting a claim against Defendants Federal National Mortgage Association ("Fannie Mae") and BAC Home Loans Servicing, LP ("BAC") arising from the foreclosure sale of her home in Southfield, Michigan. Plaintiff claims that Defendants initiated the foreclosure sale without proper chain of title due to a clerical error in the transfer of the mortgage from a prior mortgage holder to BAC, in violation of M.C.L. § 600.3244. Defendants removed the case to this Court on August 16, 2012, and the parties have now filed cross-motions for

1

summary judgment.  Defendants argue that (1) Plaintiffs' claims are barred by *res judicata* because a Michigan state court already ruled that the foreclosure was valid and issued a Judgment of Possession to Defendant Fannie Mae, the purchaser of the home at the sheriff's sale; and (2) the clerical error in the mortgage transfer did not invalidate the mortgage.  Plaintiff opposes these two points in her own motion for summary judgment.  The Court also issued an order directing the parties to file supplemental briefing as to whether the Court has jurisdiction under the *Rooker–Feldman* doctrine, and the parties have done so, both arguing that this Court has jurisdiction.

Having reviewed and considered the parties' briefs and supporting documents and the entire record of this matter, the Court has determined that the pertinent allegations and legal arguments are sufficiently addressed in these materials and that oral argument would not assist in the resolution of this motion.  Accordingly, the Court will decide the parties' motions "on the briefs." See L.R. 7.1(f)(2).  This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

The facts are mostly undisputed and relatively straightforward.  On August 31, 2004, Plaintiff Theola Veasley attempted to close on the purchase of a home at 24669 Lafayette Circle, Southfield, Michigan ("24669 Lafayette") from non-party

Royse Development.  Pl.'s Compl. ¶ 8, Dkt. # 1.  At the closing, however, Royse conveyed to Plaintiff a warranty deed to a different property: 24654 Lafayette Circle, Southfield Michigan ("24654 Lafayette").  Def.'s Mot. for Summ. J., Ex. A, Dkt. # 15-2.  The warranty deed contained a metes-and-bounds description of 24654 Lafayette, and described those metes-and-bounds as "[m]ore commonly known as: 24654 Lafayette Circle."  *Id.*  Plaintiff financed her intended purchase of 24669 Lafayette through a $249,000 loan from Countrywide Home Loans, secured by a mortgage executed by Plaintiff and granted to non-party Mortgage Electronic Registration Systems, Inc. (the "Mortgage").  *Id.* at Ex. B-C, Dkt # 15-3, 15-4. The Mortgage granted a security interest in 24654 Lafayette, the property for which Plaintiff had incorrectly been given a deed.

The mistake in the deed was quickly discovered.  In December 2004, Plaintiff conveyed 24654 Lafayette to its intended owner, Anthony Rhine, and Rhine conveyed 24669 Lafayette to Plaintiff.  *Id.* at Ex. D-E, Dkt. # 15-5, 15-6. Both deeds contained the correct metes-and-bounds descriptions of the properties as well as the correct descriptive addresses.  *Id.*  On October 21, 2005, Plaintiff and Mortgage Electronic Registration Systems executed a modification "to correct the legal description" of the Mortgage and bring it into line with the corrected deed. *Id.* at Ex. F, Dkt. # 15-7.  The modification contained the correct metes-and-bounds description of 24669 Lafayette and the correct descriptive address.  *Id.*  On

the same day, Mortgage Electronic Registration Systems granted Plaintiff a partial release of the Mortgage only as to the 24654 Lafayette property.  *Id.* at Ex. G, Dkt. # 15-8.

Nearly five years later, on August 30, 2010, Mortgage Electronic Registration Systems assigned the Mortgage to Defendant BAC.  *Id.* at Ex. H, Dkt. # 15-9.  The assignment specifically stated that it transferred interest in "a certain real estate mortgage dated August 31, 2004, made by Theola Veasley . . . to Mortgage Electronic Registration Systems, Inc." and referenced the Mortgage's original county liber number.  *Id.*  The assignment provided the correct address of Plaintiff's property, 24669 Lafayette, but, like the original mortgage, incorrectly contained the metes-and-bounds description of the 24654 Lafayette property.  *Id.*

The error apparently went unnoticed until the foreclosure proceedings leading to this case.  At some point in 2010, Plaintiff defaulted on the Mortgage. Pl.'s Compl. ¶ 15, Dkt. # 1.  BAC subsequently initiated foreclosure proceedings and published notices of foreclosure.  Def.'s Mot. for Summ. J., Ex. I, Dkt. # 15-10.  On February 22, 2011, a sheriff's sale was held for the 24669 Lafayette property, and Defendant Fannie Mae purchased the property for $68,000.  *Id.*  All foreclosure notices and the sheriff's deed produced at the sale provided the correct metes-and-bounds description and correct address of 24669 Lafayette.  *Id.*

4

In accordance with Michigan law, the sale was only to become operative at the expiration of a redemption period, allowing Plaintiff the opportunity to reclaim the home by paying the amount bid at the sheriff's sale, plus interest and fees. *See* M.C.L. § 600.3244. The redemption period was set to expire on August 22, 2011. Def.'s Mot. for Summ. J., Ex. I, Dkt. # 15-10. On July 29, 2011, Plaintiff retained the services of non-party Dynamic Housing Solutions ("DHS") to facilitate the redemption.[1] Pl.'s Mot. for Summ. J., Dkt. # 17, at 5. On August 17, Plaintiff received a written calculation of the redemption amount, and on the same day, Dynamic Housing Solutions mailed a letter "requesting a 4 day written redemption extension to allow time" for the funds, which were "sitting in a retirement account" to be transferred. *Id.* at Ex. I-J.[2] This extension was never approved, and Plaintiff

---

[1] As support for this, Plaintiff provides only an "authorization letter" stating that she "[gave her] complete consent and authorization to . . . Dynamic Housing Solutions, to give and receive any and all documentation and communication regarding [her] home at 24669 Lafayette." Pl.'s Mot. for Summ. J., Ex. H, Dkt. # 17-2.

[2] Why this extension was necessary is not entirely clear. Plaintiff apparently requested calculation of the redemption amount on August 3, 2011, and email correspondence occurred between Dynamic Housing Solutions and Bank of America during early August in attempt to produce the calculation, though it is not clear why it was not sent until August 17. Pl.'s Mot. for Summ. J., Exs. J-K, Dkt. # 17-2. In her brief in support of her motion for summary judgment, Plaintiff claims that because there were only five days between the date on which she received the calculation of the redemption (August 17, 2011) amount and the expiration of the redemption period (August 22, 2011), there was not sufficient "lead time" for the funds to be "withdrawn from [her] money market/retirement

5

did not make any payment by the expiration of the redemption period on August 22, resulting in Fannie Mae taking title to 24669 Lafayette.

On April 9, 2012, Fannie Mae brought an action in Michigan's 46th District Court, seeking to recover possession of 24669 Lafayette (Case No. LT12-1800).[3] The court held a hearing on April 24, 2012, and on June 14, 2012, in a summary proceeding, it issued a Judgment of Possession to Fannie Mae.  *Id.* at Ex. L.  There is no record of the issues discussed at the hearing -- the Judgment was issued without any accompanying opinion.   An order for eviction was subsequently entered on July 25, 2012.

Plaintiff did not appeal that Judgment, instead filing the instant action on July 13, 2012, in Oakland County Circuit Court, asserting a single claim: that Defendants did not comply with M.C.L. § 600.3204, which requires that "a record chain of title must exist before the date of sale" by the party foreclosing the mortgage.  Pl.'s Compl., Dkt. # 1, at ¶ 26.  Plaintiff requested that the court (1) set aside the foreclosure sale and resulting sheriff's deed and (2) enjoin eviction

---

account."  Pl.'s Mot. for Summ. J., Dkt. # 17, at 5.

[3] In their joint statement regarding past and present litigation, the parties also note that Fannie Mae had previously brought a separate case against Plaintiff in Michigan's 46th District Court (Case No. LT11-4314) that was dismissed without prejudice, though the record does not indicate why the case was dismissed.  Joint Statement Regarding Past and Present Litigation, Dkt. # 24, at 2.

proceedings.  Pl.'s Compl., Dkt. # 1.  *Id.*  Defendants subsequently removed the action to this Court on August 16, 2012, Def.'s Removal, Dkt. # 1, and, on August 30, 2012, the parties entered a joint stipulation staying the state eviction action (Case No. LT12-1800) pending resolution of this case.  Dkt. # 4.  The parties have now filed cross-motions for summary judgment.  Dkt. # 15, 17.  On March 28, 2014, this Court issued an order directing the parties to file supplemental briefing as to whether Plaintiff's Complaint must be remanded to the Oakland County Circuit Court pursuant to the *Rooker–Feldman* doctrine.[4]  Dkt. # 22.  The parties have now submitted such briefing, and the issues are ripe for review.

# III. DISCUSSION

## A.    Rule 56 Standard

Through their present motions, both parties seek summary judgment in their favor pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Under that Rule, Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

4 As put in that order, "[u]nder *Rooker–Feldman*, a federal district court lacks jurisdiction to review state court proceedings, as such review is limited to the Supreme Court of the United States.  *See, e.g.*, *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005); *McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006); *Battah v. ResMAE Mortg. Corp.*, 746 F. Supp. 2d 869 (E.D. Mich. 2010) (Rosen, C.J.)."  Order Requiring Supplemental Briefing, Dkt. # 22, at 2.

matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In addition, where a moving party seeks an award of summary judgment in its favor on a claim or issue as to which it bears the burden of proof at trial, this party's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (emphasis and citation omitted).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). But, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

8

**B.    Because the State-Court Eviction Suit Remains Pending, the *Rooker– Feldman* Doctrine Does Not Apply Here**

Though neither party has moved to remand this case to state court for lack of federal jurisdiction, under Federal Rule of Civil Procedure 12(b)(1), this Court may dismiss or remand *sua sponte* a complaint for lack of subject matter jurisdiction. The *Rooker–Feldman* doctrine is a judicially imposed limitation on subject matter jurisdiction that divests a federal court of jurisdiction over cases that invite review of state-court proceedings, even where a federal question is raised or complete diversity of the parties is present.  *See Exxon Mobil Corp.* v. *Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) ("*Rooker* and *Feldman* exhibit the limited circumstances in which [the Supreme Court's] appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority, *e.g.*, § 1330 (suits against foreign states), § 1331 (federal question), and § 1332 (diversity).").

The doctrine arises from a pair of Supreme Court decisions.  In *Rooker v. Fidelity Trust Co.*, the plaintiff filed a federal action seeking to have a prior state-court decision "declared null and void."  *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 414 (1923).  The Court, noting that "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify" the state

9

decision and that "[t]he jurisdiction possessed by the District Courts is strictly original," the Court affirmed dismissal of the action. *Id.* at 416; *see also* 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution . . . or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution . . . ."). And in *District of Columbia Court of Appeals v. Feldman*, the Court elaborated on the circumstances under which jurisdiction is divested by the *Rooker* principle. In that case, the plaintiffs had unsuccessfully sought permission, in the District of Columbia Court of Appeals, to sit for the District of Columbia bar examination despite not having graduated from an "approved law school" as required by District of Columbia statute. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 464-65 (1983). The plaintiffs then brought a federal lawsuit against the District of Columbia Court of Appeals, asserting that the state ruling violated their Fifth Amendment rights and asking, in part, that the federal court grant a waiver for them to sit for the bar. The Supreme Court held that the district court lacked jurisdiction over the waiver petitions, as they were "inextricably intertwined with

10

the District of Columbia Court of Appeals' decisions, in judicial proceedings, to deny [plaintiffs'] petitions." *Id.* at 486-87.

The Supreme Court revisited the *Rooker–Feldman* doctrine more recently in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005). The Court's holding in that case dealt with parallel state and federal litigation -- which does not trigger *Rooker–Feldman* -- but in influential dicta, it clarified that the *Rooker–Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 1521-22. Thus, "[i]f a federal plaintiff 'present[s] some *independent claim*, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* at 293 (second alteration and omission in original) (emphasis added) (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 729 (9th Cir. 1993)).

Following *Exxon Mobil*, the Sixth Circuit has elaborated on this this "independent claim" language:

> The question naturally arises as how to differentiate between a claim that attacks a state court judgment, which is within the scope of the *Rooker–Feldman* doctrine, and an independent claim, over which a

11

district court may assert jurisdiction. . . .  The inquiry . . . is the *source of the injury the plaintiff alleges in the federal complaint*.  If the source of the injury is the state court decision, then the *Rooker–Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).

Against this backdrop, the Court addresses jurisdiction in this case.  Both Plaintiff and Defendant submitted briefs supporting jurisdiction in this Court. Though the parties make several separate arguments that the Court will discuss below, the primary thrust of both briefs is that Plaintiffs' injury resulted from the incorrect property description in the assignment of the Mortgage, which, under M.C.L. § 600.3204, would prevent Defendants from foreclosing on the property. Therefore, the parties assert, "the alleged injury is from the alleged wrongdoing of third parties . . . not from legal error by the eviction court or from the Judgment of Possession itself."  Def.'s Supplemental Br., at 8.  They claim that this lawsuit "concern[s] Defendant's actions which predate the foreclosure process and any prior actions between the parties."  Pl.'s Supplemental Br., at 7.  The Court is not convinced.

First, the Court does not agree that the incorrect assignment of the Mortgage actually injured Plaintiff.  M.C.L. § 600.3204 provides that "[i]f the party foreclosing a mortgage by advertisement is not the original mortgagee, a record

chain of title must exist before the date of sale." The provision simply provides a requirement for non-original mortgagees in order to initiate foreclosure proceedings. If the assignment of the Mortgage from Mortgage Electronic Registration Systems to BAC was indeed faulty, that faulty assignment did not harm Plaintiff in any way; indeed, it would *benefit* her by potentially eliminating her debt obligation. Plaintiff was, however, injured when possession of her house was turned over to BAC. But the source of that injury was the state-court judgment, not the Defendants' actions in receiving the assignment of the Mortgage. Plaintiff's claim that the foreclosure was invalid because the Mortgage was not properly assigned is, essentially, a direct challenge to the state-court ruling; she is asserting a *defense* to that action.

This reasoning is in line with opinions both in this Court and the Sixth Circuit finding that federal suits brought by state-court losers of foreclosure and possession actions seeking to challenge those orders are barred by *Rooker–Feldman*. In *Battah v. ResMAE Mortgage Corp.*, for example, the plaintiff had defaulted on a mortgage, leading to a sheriff's sale at which a bank purchased the property. 746 F. Supp. 2d 869, 872 (E.D. Mich. 2010). When the plaintiff failed to redeem, the bank sold the property to a third party. *Id.* The plaintiff brought suit in state court, seeking a restraining order preventing eviction, which was dismissed, and the third-party owners subsequently brought a possession and

13

eviction action in state court and won a default judgment.  *Id.*  The plaintiff then filed suit in state court, asserting, among other claims, violation of Michigan's foreclosure statute and that the third-party owners were not proper holders of the mortgage note, and sought to "undo the sheriff's sale of the property . . . and prevent the eviction proceedings."  *Id.* at 871, 873.  After the defendants removed the case, this Court remanded on *Rooker–Feldman* grounds, stating that "Plaintiff lost a state court foreclosure and possession action, and the state court entered an order of eviction against him.  Any of Plaintiff's current claims which seek to disturb the state court judgments of foreclosure, possession, or eviction, are subject to the *Rooker–Feldman* doctrine."  *Id.* at 873.  Importantly, however, the Court did not remand the plaintiff's independent claims of injury resulting from the defendants' actions, involving fraud, conspiracy, and promissory estoppel relating to the original loan application. *See id.* at 874-75.  Instead, only claims relating to injuries *arising from the state-court decision* were remanded pursuant to *Rooker–Feldman*.

As the Sixth Circuit has instructed, further evidence that a plaintiff seeks to remedy injuries resulting from the state-court decision, not the defendant's direct conduct, can come from the language describing the relief that the plaintiff seeks:

> Revealingly, the primary relief that [the plaintiff] requests in his complaint is a temporary injunction that would "enjoin Defendants from physically entering onto plaintiff[']s property" and that would

14

> "dispos[e] . . . of any other civil or procedural action regarding the subject property." Because the point of this suit is to obtain a federal reversal of a state court decision, dismissal on the grounds of *Rooker–Feldman* was appropriate.

*Givens v. Homecomings Fin.*, 278 F. App'x 607, 609 (6th Cir. 2008) (second and third alterations and omission in original).  Plaintiff's complaint in this case is remarkably similar.  She requests

> the Court to find that the foreclosure by advertisement proceedings more fully described herein are void *ab initio* and requests that the Court set aside the February 22, 2011 foreclosure sale and resulting Sheriff's Deed granted to [Fannie Mae]. Without such relief, Plaintiff and the occupants of 24669 Lafayette Circle face imminent eviction and thus irreprapble (sic) harm. Accordingly, Plaintiff further requests that the Court enjoin the 46th District Court (Southfield) from taking action on any Application for Order of Eviction which [Fannie Mae] may seek to obtain possession of the home.

Pl.'s Compl. ¶ 26., Dkt. # 1.  Like in *Givens* and *Battah*, Plaintiff's injury here arises from the state-court judgment and her claim seeks to disturb that judgment.

Numerous other cases have similarly found that *Rooker–Feldman* applies when a plaintiff seeks to overturn a state-court foreclosure order in federal court. *See, e.g.*, *Kafele v. Lerner, Sampson & Rothfuss, L.P.A.*, 161 F. App'x 487, 490 (6th Cir. 2005) ("That the plaintiffs' claims are indeed 'inextricably intertwined' is evident from the fact that there is simply no way for this or any other court to grant relief without disturbing the judgments of foreclosure entered by the state court. Each of the myriad and vague claims set forth by the plaintiffs rests on the premise

15

that the state court entry of foreclosure was invalid."); *Selakowski v. Fed. Home Loan Mortg. Corp.*, No. 13-12335, 2014 WL 1207874, at *4-5 (E.D. Mich. Mar. 24, 2014) (finding a federal action asserting a claim under the Real Estate Settlement Procedures Act and seeking to set aside a sheriff's sale "is precisely [the] review and 'reversal' of a state court judgment by a federal district court that the *Rooker–Feldman* doctrine forbids," but finding federal jurisdiction appropriate because the state-court decision was not final); *Mallory v. Cnty. of Wayne*, No. 09-14358, 2010 WL 2632196 (E.D. Mich. June 29, 2010) ("[Plaintiff] lost a state-court foreclosure action that awarded a Judgment of Possession to [Defendant]. . . . Plaintiff is the type of state-court loser complaining of injuries from a state court judgment that triggers the *Rooker–Feldman* jurisdictional bar even after *Exxon Mobil*."); *Sanford v. Standard Fed. Bank*, No. 09-10506, 2009 WL 4885241, at *2, 4 (E.D. Mich. Dec.15, 2009) (applying *Rooker–Feldman* following a state-court judgment of possession where plaintiff alleged in federal court that "the foreclosure action of the property as well as the sheriff's deed are invalid" and sought an order vacating the deed).

The parties make several attempts to distinguish this case from *Battah* and the cases like it. They both assert that because "[Plaintiffs'] claim regarding the allegedly faulty assignment was not even raised in, or addressed by the eviction court," it must be an independent claim. Def.'s Supplemental Br., at 8; *see also*

16

Pl.'s Supplemental Br., at 6.  Plaintiff actually contradicts herself in this regard, stating in her brief in support of summary judgment that during the state-court eviction proceedings, she "pointed to the defective legal description in the Assignment as grounds to demonstrate that [Fannie Mae] did not have the right to possession and therefore no right to the entry of a Judgment of Possession."  Pl.'s Mot. for Summ. J., Dkt # 17, at 6.  But even assuming that Plaintiff's "faulty assignment" argument was never heard by the state court, the inquiry does not turn on whether the plaintiff presents some new argument to the federal court that was not dealt with by the state court.  Instead, the inquiry centers on "the source of the injury the plaintiff alleges in the federal complaint," *Braverman*, 451 F.3d at 393, and, as discussed above, the source of the injury in this case was the state-court decision, not the allegedly faulty assignment of the Mortgage.

Second, the parties argue in their briefs that Defendants allegedly "prevented Plaintiff from redeeming the property" by providing Plaintiff with the written calculation of the redemption amount only days before the redemption period was set to expire, and subsequently refusing to grant Plaintiff's request for an extension.  Def.'s Supplemental Br., at 8; *see also* Pl.'s Supplemental Br., at 6. But Plaintiff's complaint does not assert this claim -- the *only* count listed in her complaint is violation of M.C.L. § 600.3204.  Pl.'s Compl. ¶¶ 22-26, Dkt. #1.  She cites to no law that Defendants violated during Plaintiff's unsuccessful attempt to

17

redeem the property. *See id.* Therefore, even if Plaintiff has an independent claim arising from the allegedly faulty redemption process, she has not presented it to this Court.[5]

However, a separate issue, which the parties do not raise in their briefs, prevents *Rooker–Feldman* from applying in this case. The *Rooker–Feldman* doctrine only precludes lower federal courts "from exercising appellate jurisdiction over *final* state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (emphasis added); *see also Marks v. Tennessee*, 554 F.3d 619, 622 (6th Cir. 2009). Here, there is no final state-court judgment. Though the state court has entered a judgment of possession and an order for eviction, the parties later stipulated to the entry of an order staying the state-court eviction proceedings while this case remains pending. As this Court has previously held, because of such a stipulation, the state court's order of eviction is not final, and therefore the state court proceedings are ongoing. *See Selakowski*, 2014 WL 1207874, at * 5 (finding that because the parties had stipulated to stay the state eviction proceeding, "[i]t follows

---

[5] Plaintiff also places emphasis on the fact that in *Battah*, the court noted that the plaintiff had brought a "multitude of frivolous claims" and "waste[d] judicial resources" by bringing suits through numerous courts. *Battah*, 746 F. Supp. 2d at 877; Pl.'s Supplemental Br., at 5-6, 8. While there is no indication that Plaintiff has brought frivolous claims here, she is incorrect to think this protects her from the *Rooker–Feldman* doctrine, which constrains federal courts' jurisdiction. Lower federal courts may not review state-court decisions, regardless of whether the claims involved are frivolous.

that the state district court's order of eviction is not final, and that the state court proceedings are not yet concluded. This precludes the application of the *Rooker–Feldman* doctrine"). Therefore, *Rooker–Feldman* does not apply here.

## C.   Red Judicata Bars Plaintiff's Claims

Defendants argue that summary judgment should be granted in their favor because Plaintiff's claim has already been litigated in state court and is therefore barred by *res judicata*. Defendants assert that "the claims here . . . were already resolved by Michigan's 46th District Court in favor of Fannie Mae" and that "Plaintiff cannot now re-litigate the validity of the foreclosure and sheriff's sale." Def.'s Mot. for Summ. J., at 9. Plaintiff counters, arguing that because she never raised in state court her argument that the assignment of the Mortgage was faulty, her claim here was not "actually litigated" in state court and therefore *res judicata* does not apply here. Pl.'s Mot. for Summ. J., at 2.

Federal courts are required to give full faith and credit to state-court decisions. 28 U.S.C. § 1738. Accordingly, "[r]es judicata may bar any claims over which the federal courts have jurisdiction, including both claims of injuries caused by state-court judgments and general challenges to state statutes. Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Michigan*, 474 F.3d 324, 330

19

(6th Cir. 2007).  Accordingly, this Court must apply Michigan preclusion law in determining whether the prior state-court foreclosure proceedings bar this suit.

In Michigan, *res judicata* "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first."  *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004). Michigan does, however, recognize a limited exception to the normal *res judicata* principles in foreclosure summary proceedings.  Under Michigan foreclosure law, "[t]he remedy provided by summary proceedings is in addition to, and not exclusive of, other remedies, either legal, equitable or statutory. A judgment for possession under [Michigan's foreclosure] chapter does not merge or bar *any other claim for relief*."  M.C.L. § 600.5750 (emphasis added).

The Michigan Supreme Court has provided guidance as to what qualifies as an "other claim for relief."  In *J.A.M. Corp. v. AARO Disposal, Inc.*, JAM had leased property to AARO for a set monthly rate.  600 N.W.2d 617, 618 (1999). When AARO stopped paying rent, JAM sought to take possession of the property through summary proceedings.  *Id.*  Upon finding that JAM was neither a Michigan corporation nor authorized to do business in Michigan -- a requirement for the lease to be valid -- the state court found that the lease was "null and void from its inception," and JAM's complaint was dismissed.  *Id.* at 618-19.  JAM then

20

filed a second state-court action in circuit court, asserting various breach of contract and unjust enrichment claims. *Id.* at 619-20. AARO asserted that the new claims were barred by *res judicata* because the summary proceedings had already determined the validity of the lease. *Id.* at 620. The lower state courts agreed, and dismissed JAM's claims. *Id.* But the Supreme Court of Michigan reversed, interpreting M.C.L. § 600.5750 and noting that

> the Legislature's intent [was] that summary proceedings for possession of property be handled expeditiously. Plainly the Legislature took [summary proceeding] cases outside the realm of the normal rules concerning merger and bar in order that attorneys would not be obliged to fasten all other pending claims to the swiftly moving summary proceedings.

*Id.* at 621. Since JAM's claims arose out of the same series of transactions as the summary possession proceedings, they would normally have been barred under Michigan's broad *res judicata* principles, but under the exception provided for in M.C.L. § 600.5750, there was no requirement that the claims be joined to the summary proceedings -- instead they were "other claim[s] for relief" under section 600.5750. *See id.* at 620-21.

The Michigan Supreme Court has also explained the limits of the notion of "other claim[s] for relief" under M.C.L. § 600.5750. In *Sewell v. Clean Cut Management, Inc.*, the plaintiff rented a home from the defendant and failed to pay her rent. 621 N.W.2d 222, 222 (2001). The defendant filed a state-court claim

21

and, through a summary proceeding, won a judgment evicting the plaintiff. *Id.* at

223. The plaintiff, who had been in the hospital at the time of eviction, returned to

the home and slipped and fell, sustaining injuries. *Id.* She then sued in state court,

alleging that the defendant had negligently maintained the premises. *Id.* After the

plaintiff won a jury verdict, the defendant moved for judgment notwithstanding the

verdict or, alternatively, a new trial, arguing that the earlier judgment he had won

through a summary proceeding meant that the plaintiff was a trespasser at the time

she slipped and fell, and that the summary proceeding barred relitigation of the

case through *res judicata*. *Id.* at 223-24. The circuit court denied the motion, and

the Michigan Court of Appeals affirmed, citing *JAM Corp.* *Id.* at 224.

The Michigan Supreme Court reversed, explaining the limited nature of the

M.C.L. § 600.5750 exception to *res judicata*:

> We said in *JAM Corp.* that "judgment in these summary proceedings,
> no matter who prevails, does not bar *other* claims for relief." Nothing
> in the statute or in *JAM Corp.* stands for the proposition that, having
> litigated in the district court the issue who has the right to the
> premises, that question can be relitigated de novo in a subsequent suit.
> Such an approach would empty M.C.L. § 600.5701 of all significance.
> After repossessing premises in accord with the statute and an order of
> the district court, a landlord would remain in jeopardy of further
> litigation on that same question.
>
> . . .
>
> Unlike *JAM Corp.*, this case presents a question regarding the
> preclusive effect of a claim that was actually litigated in the summary

22

proceeding. Therefore, the limited statutory exception to Michigan's *res judicata* rule does not apply.

*Id.* at 224-25 (citations omitted).

This case presents circumstances like those in *Sewell*. Here, Plaintiff's claim raises the same issue actually litigated in the summary proceeding: which party has the right to possession of 24669 Lafayette.[6] The summary proceeding established that Fannie Mae is entitled to such possession. While Plaintiff presents a new *defense* to that earlier action, she has not presented an "other claim" like those presented in *JAM Corp.*, and therefore the limited exception to *res judicata* provided for in M.C.L. § 600.5750 does not apply here, and Plaintiff's claim is precluded. *See Foley v. City of Walled Lake*, No. 11-CV-11856, 2012 WL 4449433, at *8 (E.D. Mich. Sept. 25, 2012) (finding that, where plaintiff attempted to assert a defense to a prior summary proceeding action that awarded possession to defendant, "Plaintiff should have asserted this defense during the summary proceedings in the [state] court [and has] foreclosed his opportunity to rely on that

---

[6] In support of her position that her claims were not actually litigated in the state summary proceeding, Plaintiff cites *Granderson v. US Storage Depot*, No. 10-001703-CK (Mich. Ct. App. Apr. 19, 2012). *Granderson* does not help Plaintiff, however, because, much like *JAM Corp.*, it involved "other claims" separate from earlier summary eviction proceedings, such as negligence, nuisance, and intentional infliction of emotional distress. Slip op. at 2. Relying on *JAM Corp.* the Michigan Court of Appeals found that those claims were not barred by *res judicata* in a subsequent suit. Slip op. at 3. But the instant case is distinct from *Granderson*; it involves a single claim that is not separate from the earlier summary proceeding, and thus *Granderson* is unavailing here.

defense here" due to *res judicata*); *Garza v. Freddie Mac*, No. 10-CV-11945, 2010 WL 4539521, at *3 (E.D. Mich. Nov. 3, 2010) ("Michigan's exception to *res judicata* in summary proceedings is narrow, and Plaintiff's claim does not fall within it. Any challenge to the validity of the foreclosure sale should have been raised at the summary possession proceeding. Because this Court must give full faith and credit to the decisions of Michigan's state courts in summary proceedings, Plaintiff's first claim is dismissed on the basis of *res judicata*.").

Because *res judicata* bars Plaintiff's only claim in this case, the Court need not reach the substantive issue raised by the parties' briefs: whether, under Michigan law, the transfer of the Mortgage was valid.

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendants' motion for summary judgment (Dkt. # 15) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's motion for summary judgment (Dkt. # 17) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated:  September 26, 2014          s/Gerald E. Rosen
                                    Chief, Judge, United States District Court


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 26, 2014, by electronic and/or ordinary mail.

                                    s/Julie Owens
                                    Case Manager, (313) 234-5135

25